UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00259-MOC-DLH

| | | |
|---|---|---|
| **THOMAS W. HILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **PATRICK L. MCCRORY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendants' joint renewed Motion to Dismiss (#35) and plaintiff's Opposition to Defendants' Renewed Motion to Dismiss (#38). As it appears that this court lacks jurisdiction over this controversy as a matter of law, this action will be dismissed.

I.

In his Complaint, Plaintiff states that he was a candidate for the Democrat nomination in the 11th District in both the March and June 2016 primary elections. In his First Cause of Action, Plaintiff appears to allege that the "ballot switching" authorized by the political parties in North Carolina violates the First Amendment of the United States Constitution. Plaintiff argues that persons registered as unaffiliated voters in March 2016 were allowed to change their status to become affiliated with a party, and that certain voters registered as Republicans or Democrats were allowed to switch to "unaffiliated" or switch party affiliations by the June 2016 election and that such action violated the First Amendment.[1] Plaintiff's second cause of action also appears to be

---

1     As noted by the State Board of Elections in its June 22, 2016 decision, in February 2016, a three-judge panel of federal judges, including the undersigned, enjoined the State of North Carolina from holding elections for the U.S. House of Representatives and Ordered that the General Assembly adopt a new congressional district. See Harris v. McCrory, No. 1:13-CV-949, 2016 WL 482052, at *21 (M.D.N.C. Feb. 5, 2016). The North Carolina

premised on the First Amendment, and asserts that the State Board of Elections' failure to provide the results of the March 2016 primary violates Plaintiff's First Amendment rights.

As this court expressed when it considered plaintiff's request for a TRO, the court has had jurisdictional concerns about this case from the outset. It is undisputed that plaintiff filed a protest with the State Board of Elections, raising his arguments about the propriety of unaffiliated voters being able to choose a different partisan ballot in the March and June primaries. The Board of Elections held a hearing in Raleigh, North Carolina, on July 18, 2016, and issued a decision dismissing plaintiff's election protest on July 22, 2016. North Carolina law provides a right to appeal from a final decision of the State Board of Elections, but specifies that the appropriate venue for appeal is the Superior Court of Wake County. See N.C.Gen.Stat. § 163–182.14 ("Except in the case of a general or special election to either house of the General Assembly or to an office established by Article III of the Constitution, an aggrieved party has the right to appeal the final decision to the Superior Court of Wake County within 10 days of the date of service."). The statute further provides:

> [a]fter the decision by the State Board of Elections has been served on the parties, the certification of nomination or election or the results of the referendum shall issue pursuant to G.S. 163–182.15 unless an appealing party obtains a stay of the certification from the Superior Court of Wake County within 10 days after the date of service. The court shall not issue a stay of certification unless the petitioner shows the court that the petitioner has appealed the decision of the State Board of Elections, that the petitioner is an aggrieved party, and that the petitioner is likely to prevail in the appeal.

N.C. Gen. Stat. Ann. § 163-182.14(b).

---

General Assembly approved new congressional districts and passed legislation providing that the votes cast in the March 2016 primary races for the U.S. House of Representatives shall not be certified and would not become part of the public record. See N.C. Sess. Laws 2016-2 § 4. They also provided that the "second" primary election for the U.S. House of Representatives would be held on June 7, 2016. Id.

The language of the statute thus explicitly provides that the Superior Court of Wake County is the proper venue for plaintiff's claims. See also N.C. Gen. Stat. Ann. § 163-22(l) ("Notwithstanding any other provision of law, in order to obtain judicial review of any decision of the State Board of Elections rendered in the performance of its duties or in the exercise of its powers under this Chapter, the person seeking review must file his petition in the Superior Court of Wake County."). Here, plaintiff has not shown that he has appealed his case to the Wake County Superior Court or sought a stay of certification in that court. Thus, plaintiff has not properly appealed his protest as proscribed by statute and has not complied with the procedures for appealing decisions of the State Board of Elections. See Ponder v. Joslin, 138 S.E.2d 143, 150 (N.C. 1964) (finding that where State Board of Elections obtains jurisdiction of an election protest, its decision can only be reviewed as provided by statute.).

II.

Defendants have moved to dismiss this action, which plaintiff attempts to bring against these state defendants, under the First Amendment to the United States Constitution. However, under the Eleventh Amendment to the United States Constitution, the State of North Carolina enjoys immunity from suit in this court. To the extent this suit is not barred under the Eleventh Amendment, it is barred as plaintiff failed to completely exhaust his state-court remedies by failing to appeal the final decision of the State Board of Elections to the North Carolina General Court of Justice, Superior Court Division, for Wake County, as North Carolina law clearly provides.

Generally, the Eleventh Amendment protects a State, State agencies, and State officials from suit in federal court by one of the State's citizens or the citizen of another state. California v. Deep Sea Research, 523 U.S. 491, 501 (1998); Hutto v. S. Carolina Ret. Sys., 773 F.3d 536, 543

(4th Cir. 2014) ("sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating."). However, "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that Amendment." Ex parte Young, 209 U.S. 123, 154 (1908).

A State official *can* be sued for prospective injunctive relief to *prevent* the continuing enforcement of an unconstitutional law. S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008). Such officials may be sued, "but only if they have 'some connection with the enforcement' of an unconstitutional act." Wright v. North Carolina, 787 F.3d 256, 262 (4th Cir. 2015)(quoting Ex parte Young, 209 U.S. at 157). Thus, for an official "[t]o be amenable to suit under the Eleventh Amendment, there must be a 'special relation' between the state official being sued and the challenged action. This requires 'proximity to and responsibility for the challenged state action.'" Id. (emphasis added); Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001), cert. denied, 535 U.S. 904 (2002).

Here, plaintiff is suing state officials to *enforce* a state law. Specifically, plaintiff contends that North Carolina's alleged non-enforcement of its own laws violates his rights under the First Amendment to the United States Constitution. He contends that it was a violation of his constitutional rights "for the State to allow switching of the selection of ballots between 15 March and 7 June 2016." Complaint (#1) at ¶16. Taking plaintiff's contention as true (as it must for purposes of considering a Motion to Dismiss) that North Carolina violated its own laws in allowing voters to switch party ballots in the March/June 2016 elections, see N.C.Gen.Stat. §163-182.13(a), and that such is a violation of § 163-166.7, the State of North Carolina cannot be sued in federal

court for enforcement of its own statutes. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117 (1984) ("a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment."). This action must be dismissed as it cannot be maintained as a matter of well settled federal law.

The court has also given careful consideration as to whether plaintiff has sought to enjoin enforcement of a state law that could infringe on rights afforded under federal law, a scenario which would not be subject to the immunities afforded states under the Eleventh Amendment. S.C. Wildlife Fed'n v. Limehouse, 549 F.3d at 332. Such close review reveals that plaintiff is very precise in what he seeks, which is to compel North Carolina's compliance with its own election laws regarding switching ballots, which is a past event with no indicia that it will recur. As such, plaintiff seeks retrospective relief, which is non-justiciable in this court as a matter of law, Int'l Coal. for Religious Freedom v. Maryland, 3 Fed. App'x 46, 49-50 (4th Cir. 2001)(unpublished, attached to Docket Entry 36 as Ex 1), has failed to assert a claim that is even arguably outside the protections afforded states under the Eleventh Amendment.

Under the Eleventh Amendment, this court not only lacks jurisdiction over the subject matter of this suit, it lacks jurisdiction over the State Board of Elections, Governor McCrory, and Board Chairman Whitney. Pennhurst State Sch. & Hosp., 465 U.S. at 100; Waste Mgmt. Holdings, 252 F.3d at 33. Further, to the extent plaintiff seeks to bring his cause of action under 42 U.S.C. § 1983, it is patently clear from the pleadings that plaintiff failed to first exhaust his available state remedies, which would have included appealing the final decision of the state board to the Superior Court in Wake County. N.C.Gen.Stat. § 163-182.14.

III.

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Here, this court clearly lacks subject-matter jurisdiction as this action is barred by

the Eleventh Amendment. Rule 41(b), Fed.R.Civ.P., provides in relevant part that, "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . except one for lack of jurisdiction . . . operates as an adjudication on the merits." As other courts have found,

> [d]ismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case. *See Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir.2005). It is true that, in rare cases where a district court lacks jurisdiction, the court may dismiss a claim with prejudice "as a sanction for misconduct." *Id.* But there was no finding of misconduct here.

Revere v. Wilmington Finance, 406 Fed.Appx. 936, 937 (6th Cir. 2011). While these claims may well have abated or may no longer present a live controversy, the court will not make such dismissal "with prejudice." Plaintiff is advised that this does not mean that he can refile these claims in federal court; rather, such dismissal is without prejudice as to refiling them in an appropriate state forum if such can be done in good faith.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' joint renewed Motion to Dismiss (#35) is GRANTED, and this action is DISMISSED without prejudice in its entirety in accordance with Rule 12(b)(1). As a matter of housekeeping, all other motions are terminated as moot.

**Advice of Appellate Rights**

In accordance with Wilder v. Chairman of the Central Classification Bd., 926 F.2d 367, 371 (4th Cir.)("while not mandated, the preferable practice is to include a statement to all final

orders involving *pro se* litigants setting forth the litigants' appellate rights"), cert. denied, 502 U.S. 832 (1991), defendant is hereby advised of the right to appeal this decision to the Court of Appeals of the Fourth Circuit in the manner described in Rule 3, Federal Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk of this Court within the time prescribed in Rule 4, Federal Rules of Appellate Procedure, which is **30 days** from entry of this Order. Fed.R.App.P. 4(a)(1)(A). Failure to file a Notice of Appeal within the time allowed requires the filing of a motion for extension of time within the 30-day period after such time for appeal. Fed. R. App. P. 4(a)(5).

Signed: October 7, 2016

Max O. Cogburn Jr
United States District Judge